**Harold T. COUNCIL, Executor of the Estate of Eloise LeGrand Council, Deceased, and Harold T. Council, Individually, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**No. GC 6655.**

United States District Court
N. D. Mississippi,
Greenville Division.

Sept. 8, 1969.

C. S. Tindall and Frank S. Thackston, Jr., of Lake, Tindall & Hunger, Greenville, Miss., for plaintiffs.

H. M. Ray, U.S.Atty., Oxford, Miss., Hubert M. Doster, Refund Trial Section No. 2, Johnnie M. Walters, Asst. Atty.

Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

Plaintiff sues defendant herein for an alleged erroneous overpayment of estate taxes on the estate of Eloise LeGrand Council. Plaintiff contends that the taxes involved were erroneously and illegally assessed and collected by defendant. Plaintiff seeks to recover the taxes with interest. The material facts are not in dispute.

The issues have been submitted to the Court for its decision on the pleadings, the facts which have been admitted as true by defendant, in response to plaintiff's requests for admissions, briefs of the parties, and the documents attached to the pre-trial order.

The issue concerns the interest of the decedent at the time of her death in certain property situated in Montgomery, Alabama. Plaintiff claims the interest to have been an eight-thirty-seconds interest ($\frac{8}{32}$nds), while defendant claims it to have been a twelve-thirty-seconds interest ($\frac{12}{32}$nds). The amount of tax involved is the sum of $24,790.10, plus statutory interest, as has been stipulated by the parties.

The controversy grows out of the effect to be given to a settlement between decedent and her brother, Milton Paul LeGrand, of their father's estate, which contained valuable real estate in the City of Montgomery, Alabama.

W. H. LeGrand, father of decedent, and Milton Paul LeGrand, on March 14, 1894, executed a Deed of Trust to his brother, M. P. LeGrand,[1] whereby he conveyed all of his property in trust

---

[1]. M. P. LeGrand, brother of W. H. LeGrand, was married, but had no children. Milton Paul LeGrand is the son of W. H. LeGrand. There is also involved in the case, the son of Milton Paul LeGrand, whose name is Milton Paul LeGrand, Jr. For the sake of clarity, M. P. LeGrand will be hereinafter referred to as M. P. LeGrand I; Milton Paul LeGrand as M. P. LeGrand II; and, Milton Paul LeGrand, Jr., as M. P. LeGrand III.

for his benefit, and, should he marry, for his benefit and the benefit of his wife and children.[2]

Thereafter upon the death of M. P. LeGrand I, trustee, Kate E. LeGrand, wife of the trustor, W. H. LeGrand, was appointed by the Court as the successor trustee.

When M. P. LeGrand I, died, W. H. LeGrand inherited an interest in the real estate owned by him at the time of his death, subject to the dower interest of the widow of M. P. LeGrand I. W. H. LeGrand conveyed this interest to his wife, Kate E. LeGrand, to be held by her in trust for him, his wife and children. This Trust Deed was executed March 24, 1917.[3]

W. H. LeGrand died testate on February 5, 1945. He left a will dated August 19, 1925, and a codicil thereto dated December 14, 1942. The will provided a life estate in his property for his wife, with the remainder to go to his children. The wife was appointed executrix without bond. The codicil changed the plan of the will, the disposition of the testator's property, and limited the devise to his children to a life estate, with the remainder to his grandchildren, per capita and not per stirpes. The pertinent part of the will and codicil is set out in the footnotes.[4]

2. The critical part of the trust document provides:

It being the intention of this conveyance to transfer and convey unto the said M. P. LeGrand any and all property of whatever kind or description which I may have, or to which I may be entitled. To have and to hold unto the said M. P. LeGrand, his successors and assigns, forever, but upon the following uses and trusts: He shall manage, use, and employ the estate and interest hereby conveyed in such manner as may seem to him best for my use and benefit, and for the use and benefit of my wife and children, if I hereafter marry, and shall pay over to me and them, from time to time, such part of the income therefrom as he may deem necessary for my, and their, reasonable maintenance and support.

In case I shall die without wife or children, the property and interests hereby conveyed shall be divided among my natural heirs."

3. The critical part of the Trust Deed provides:

"To have and to hold all the above mentioned real estate or interest in real estate hereby conveyed or intended to be conveyed unto the said Kate E. LeGrand as said trustee; subject to the agreed dower interest of Mary Virginia LeGrand, the widow of said M. P. LeGrand therein; but upon and for the following uses and trusts;

The said trustee shall hold and manage said property or interests in property, hereby conveyed or intended to be conveyed, and receive and collect the rents income and profits thereof; and shall apply the same in her discretion, and as she may choose to our maintenance and support, the maintenance and support of the survivor, and for the maintenance and support of our children and upon my death and the death of my wife, said trust shall terminate and said property vest absolutely in our children then living, share and share alike, but if any of our children shall die leaving a child or children living at the time of my death, if I should survive my wife, or at the time of her death, if she should survive me, then such child or children of the deceased child shall receive the portion which such deceased child would have received in said property."

4. The granting provision of the will provides:

"Item II

I give, devise and bequeath all of my property, of whatsoever kind, nature and description, and wheresoever situated, to my beloved wife, Kate E. LeGrand, for and during the term of her natural life, and at her death it is my will that my said property shall be then divided between my children then living, and if any of my children shall then be dead that the children or descendants of any deceased child shall take the share to which his or her parent would be entitled if living. It is my will and desire that my said wife shall continue to act as trustee for my property just as she has been doing under trust deeds heretofore executed by me."

This was changed in the codicil to:

"Item I

I hereby revoke Item II of my last will and testament above referred to

Mrs. Kate E. LeGrand, (hereinafter sometimes referred to as "Mrs. Le-Grand", or the "trustee") as trustee under the trust instruments aforesaid and as executrix under her husband's will, which had been theretofore duly admitted to probate, on July 10, 1945, filed a petition in the Circuit Court of Montgomery County, Alabama, naming therein as respondents, M. P. LeGrand II, his children, Eloise LeGrand Council (who will be hereinafter referred to as Mrs. Council) and her only child, an adopted daughter, LeGrand Council, seeking instructions as to her duties as trustee and executrix. Mrs. LeGrand also petitioned the Court for a construction of the trust instruments, will and codicil.

W. H. LeGrand married his wife on April 28, 1897. M. P. LeGrand II and Mrs. Council were children of this marriage and survived their father. There were no other children, or descendants of such who survived W. H. LeGrand. M. P. LeGrand II had three children living at the time the petition was filed, two of which were minors. Mrs. Council did not have a natural child, but had the adopted daughter above mentioned, who was then a minor. The Court appointed guardians ad litem for the minor respondents.

In response to the petition the Court entered a decree on July 27, 1945, the effect of which was to provide that Mrs. LeGrand should receive and use all of the trust income for and during her lifetime to the exclusion of the two children and that the two children, M. P. LeGrand II and Mrs. Council, should share equally the remainder, with the unrestricted right to dispose of the same during the lifetime of the life tenant.[5]

and in lieu thereof I hereby give, devise and bequeath all of my property, of whatever kind, nature and description and wherever situated, to my beloved wife, Kate E. LeGrand, for and during the term of her natural life and, at her death, it is my will that my said property shall go to my beloved son, Paul LeGrand, and to my beloved daughter, Eloise Council, share and share alike, for and during the term of their natural lives. At the death of my son, Paul LeGrand, the one-half share in my estate, which I have given to him for life, shall then be divided equally in fee, per capita, between his children then living and the children of my daughter, Eloise Council, then living, including her adopted daughter LeGrand Council. At the death of my daughter, Eloise Council, the one-half share in my estate, which I have given to her for life, shall be divided equally in fee, per capita, between her children then living, including her adopted daughter, LeGrand Council, and the children of my son, Paul LeGrand, then living. If either my son, Paul LeGrand, or my daughter, Eloise Council, should predecease me or not be living at the time of the death of my wife, then on the death of my wife the share which such deceased child would have taken shall be immediately divided in fee as hereinabove set forth. If any of the children of my daughter, Eloise

Council, including her adopted daughter, LeGrand Council, or any of the children of my son, Paul LeGrand, should not be living at the time of my death or the death of my son, Paul LeGrand, or the death of my daughter, Eloise Council, then the children or decedents of such deceased child, if any, shall take the share to which his or her parents should be entitled if living. It is my will and desire that my said wife shall continue to act as Trustee for my property just as she has been doing under trust deeds heretofore executed by me."

5. The decree of the Court provided:
"2. Proceeding, therefore, to advise and instruct petitioner, as prayed in the petition, this Court answers said several inquiries as follows:
A. The trust created by the trust instrument dated March 14th, 1894 does not terminate upon or by reason of the death of testator, William Homer Le-Grand.
B. Inquiry A being answered in the negative, this inquiry is not pertinent.
C. Said trust created by the instrument dated March 14th, 1894 will terminate upon the death of the said Kate E. LeGrand, whereupon the equitable or beneficial title to the corpus of the trust will merge with the legal title to said trust estate, in the Respondents Milton Paul LeGrand and Eloise Le-

While the suit was pending in court, M. P. LeGrand II and Mrs. Council entered into a contract to make mutual wills and executed separate but similar wills. M. P. LeGrand II executed the documents on July 10, 1945. Mrs. Council executed them on July 21, 1945. It is noted that the will and contract were executed by M. P. LeGrand II on the same day the petition was presented to the court by his mother. Mrs. Council signed her will and the contract eleven days later, but six days before the entry of the final decree.

The wills provided for the transfer of the interest of each of the parties in the trust property. M. P. LeGrand II devised his interest to his wife for life, and at her death to his children and the children of Mrs. Council, including her adopted daughter, in equal shares, that is per capita and not per stirpes. Mrs. Council devised her interest to her husband for life and the remainder, at his death, to the children of M. P. LeGrand II and her children, including the adopted daughter, or any other child that she might thereafter adopt, in equal shares, that is per capita and not per stirpes. Each will contained provisions for the disposition of the share of a remainderman, should the remainderman die before the life tenant. The net effect of the wills was to carry out the intent and purpose of their father as expressed in the codicil to his will, that the property constituting the trust estate ultimately pass to and be enjoyed by his grandchildren equally, that is per capita and not per stirpes.

Mrs. LeGrand died December 24, 1949. On December 17, 1954, Mrs. Council, her husband and adopted daughter filed suit in the United States District Court at Montgomery, Alabama, against M. P. LeGrand II, his wife and children, seeking to set aside and cancel the aforementioned contract and mutual wills executed pursuant thereto, on the grounds of fraud and she had been overreached by her brother. The suit was settled by the parties. In the settlement the contract and wills were cancelled, and Mrs. Council, being joined therein by her husband and adopted daughter, conveyed to the three children of M. P. LeGrand II an undivided two-sixteenth (²/₁₆ths) interest in the real property constituting

Grand Council, equally, share and share alike; said interests being vested in the said Milton Paul LeGrand and Eloise LeGrand Council, respectively, and subject to disposition by them, respectively, by Will or otherwise, during the period of the continuation of the trust, that is, prior to the death of Kate E. LeGrand, or thereafter, as they may determine.

D. It was the trustor's intent under said trust instrument dated March 14th, 1894 to vest in the Trustee uncontrolled discretion as to the disposition and use of the income from said trust, and she has the right, if she so determines, to use said income in its entirety or such part thereof as she may determine, for her maintenance and support or for the maintenance and support of Eloise LeGrand Council and Milton Paul LeGrand, or either of them.

E. It was the trustor's intent under the trust instrument dated March 24th 1917 to vest in the Trustee uncontrolled discretion as to the disposition and use of the income from said trust, and said Trustee has the right, if she so determines, to use said income in its entirety or such part thereof as she may determine, for her maintenance and support, or for the maintenance and support of Eloise LeGrand Council and Milton Paul LeGrand, or either of them.

F. The remainder interests created in favor of the trustor's children, to-wit, Milton Paul LeGrand and Eloise LeGrand Council, under the trust instrument dated March 24th, 1917 is a vested remainder as to each.

G. No part or portion of either of the trust estates created by said trust deeds dated, respectively, March 14, 1894 and March 24, 1917, pass into or become a part of the general estate of William Homer LeGrand, to be administered under or in accordance with his Last Will and Testament and the Codicil thereto.

H. Said Will and Codicil having a different field of operation, does not prevail over said trust instruments, or either of them."

the trust estate, reserving to herself a life estate, and after her death, a life estate in her husband.

The undivided two-sixteenth, or one-eighth, interest in the real property, formerly constituting the trust estate, conveyed by the deed aforesaid, is the subject of this litigation. The defendant contends that this transfer was not a sale for an adequate and full consideration in money or money's worth within the purview of the Internal Revenue Code and Treasury Regulations issued pursuant thereto. Plaintiff makes the contrary contention. The section of the code and pertinent regulations of the Treasury Department are set forth in the footnotes.[6]

The ultimate issue for determination by the Court is whether decedent received an adequate and full consideration in money or money's worth for the transfer by her to her brother's children of the remainder interest in an undivided one-eighth interest in the subject property.

W. H. LeGrand owned an undivided one-third interest in the subject property, when he executed the trust instrument of March 14, 1894. He conveyed this interest to his brother, M. P. Le-Grand I, as trustee.

6. "STATUTES AND REGULATIONS INVOLVED
Internal Revenue Code of 1954:
§ 2036. Transfers with retained life estate.
(a) *General rule.*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in a case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
(1) the possession or enjoyment of, or the right to the income from, the property, or
(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.
*   *   *   *   *
(26 U.S.C.1964 ed., Sec. 2036.)
Treasury Regulations on Estate Tax (1954 Code):
§ 20.2036–1 *Transfers with retained life estate.*
(a) *In general.* A decedent's gross estate includes under section 2036 the value of any interest in property transferred by the decedent after March 3, 1931, whether in trust or otherwise, except to the extent that the transfer was for an adequate and full consideration in money or money's worth (see § 20.-2043–1), if the decedent retained or reserved (1) for his life, or (2) for any period not ascertainable without reference to his death (if the transfer was made after June 6, 1932), or (3) for any period which does not in fact end before his death—
(i) The use, possession, right to the income, or other enjoyment of the transferred property, or
(ii) The right, either alone or in conjunction with any other person or persons to designate the person or persons who shall possess or enjoy the transferred property or its income (except that, if the transfer was made before June 7, 1932, the right to designate must be retained by or reserved to the decedent alone).
If the decedent retained or reserved an interest or right with respect to all of the property transferred by him, the amount to be included in his gross estate under section 2036 is the value of the entire property, less only the value of any outstanding income interest which is not subject to the decedent's interest or right and which is actually being enjoyed by another person at the time of the decedent's death. If the decedent retained or reserved an interest or right with respect to a part only of the property transferred by him, the amount to be included in his gross estate under section 2036 is only a corresponding proportion of the amount described in the preceding sentence. An interest or right is treated as having been retained or reserved if at the time of the transfer there was an understanding, express or implied, that the interest or right would later be conferred.
*   *   *   *   *
(26 C.F.R., Sec. 20.2036–1.)"

On May 14, 1895, W. H. LeGrand conveyed to the said trustee to be held by him under the 1894 trust instrument an additional one-sixth undivided interest in said property. At this point an undivided one-half interest in the said property was held in the trust, and the other one-half was held by M. P. LeGrand I, brother of W. H. LeGrand, and trustee in said trust.

Thereafter upon the death of M. P. LeGrand I, W. H. LeGrand inherited an undivided one-half interest in his brother's interest in said property, subject to the dower rights of his brother's wife.

The trust instrument invested M. P. LeGrand I with the right to appoint, by deed or will, a trustee to succeed him in the trust, and provided that should he fail to do this, statutory proceedings should be taken to appoint a successor trustee. M. P. LeGrand I failed to name a successor trustee, and upon his death, Mrs. LeGrand was appointed by a court of competent jurisdiction to serve as trustee. The trust instrument invested the successor trustee with all of the power granted by the instrument to the trustee named therein.

On March 24, 1917, W. H. LeGrand executed a second trust instrument by which he conveyed to Mrs. LeGrand, as trustee, the interest in the property which he inherited from his brother's estate.

At this point Mrs. LeGrand, as trustee, held an undivided three-fourths interest in the trust property. She held an undivided one-half interest by virtue of of the 1894 trust, and an undivided one-fourth interest by virtue of the 1917 trust. The terms of the 1917 trust instrument, while similar to the provisions of the 1894 trust instrument, were definite as to the time for the termination of the trust and the disposition to be made of the trust property upon termination. The 1894 trust instrument was silent as to these features.

The interest in the property held by Mrs. LeGrand, as trustee, was transferred to Mrs. Council and her brother, M. P. LeGrand II, when Mrs. LeGrand died, each receiving one-half thereof, or a three-eighth interest in this property. Mrs. Council owned an undivided two-eighth interest in the property at her death. This interest was included by plaintiff in the gross estate set out in the Estate Tax Return filed by him with the Internal Revenue Service. On the audit of the return the Government included the other one-eighth and made an assessment of taxes on account thereof.

At the threshold the Court must determine the validity of the contract to execute mutual wills entered into between M. P. LeGrand II and Mrs. Council, as well as the mutual wills executed by the parties pursuant thereto.

The same principles of law apply in Mississippi as in Alabama. The question of conflict of law does not arise. There is no dispute between the parties as to the applicable principles.

It is recognized that a contract to make a will, founded upon a sufficient consideration, is valid and binding on the parties thereto. Bolman v. Overall, 1887, 80 Ala. 451, 2 So. 624 [7]; Vickers v. Pegues et al, 1946, 247 Ala. 624, 25 So.2d 720; Anding v. Davis, 1860, 38 Miss. 574; Monroe v. Holleman, Miss. 1966, 185 So.2d 443.[8]

7. In *Bolman* the Alabama Supreme Court said :
  "There is nothing in this contract which is repugnant to public policy. All the authorities agree that one may, for a valuable consideration, renounce the absolute power to dispose of his estate at pleasure, and bind himself by contract to dispose of his property by will to a particular person, and that such contract may be enforced in the courts after his decease, either by an action for its breach against his personal representative, or, in a proper case, by bill in the nature of specific performance against his heirs, devisees, or personal representatives." 2 So., Page 626.

8. The Miss. Supreme Court said in *Monroe:*
  "This Court has recognized for many years that a person may contract to leave

Thus, the solution of the problem rests upon a determination of the facts surrounding the execution of the documents. Plaintiff contends that the benefits which passed to Mrs. Council by virtue of the contract and mutual wills were many and sufficient in law to create binding and enforceable agreements.

On the other hand, defendant contends that Mrs. Council did not receive anything of value for the execution of the papers, and, in fact, made her brother's children a gift of a large portion of her interest in the property.

In considering the issue, the Court must, as near as possible, place himself in the position of the parties at the time of the execution of the documents and make a determination of the facts from that standpoint.

M. P. LeGrand II and Mrs. Council were the only children of M. H. LeGrand, who died a few months previous to the time of the execution of the documents. Prior to his death, M. H. LeGrand conveyed all of his property in trust by two separate instruments. The wife of M. H. LeGrand, and mother of these parties, survived her husband and held all of this property, as the trustee, under both trust instruments. Although having no other property of value, W. H. LeGrand attempted to vary the terms of the trust by the execution of a codicil to his will, so that ultimately the trust properties would come into the hands of his grandchildren in equal shares, that is on a per capita basis.

As stated, Mrs. LeGrand held the trust property by virtue of two trust instruments—one dated in 1894, the other in 1917. An undivided one-third interest in the property was conveyed by the 1894 instrument. In 1895 an additional one-sixteenth interest in the property was added to the trust created by the 1894 trust instrument. Thus, the 1894 trust instrument covered an undivided one-half interest in the property and its provisions controlled the use, management, and disposition of the property and the income thereof.

The 1917 trust instrument conveyed the other one-fourth interest in the property to the trustee and the handling and disposition of this interest and the income thereof were controlled by the provisions therein contained.

The 1894 trust instrument invested the trustee with wide discretionary powers in the handling of the trust property and applying the income thereof to the use of the beneficiaries.

The trustor provided that the trustee should handle the property for his benefit, and, being unmarried at the time, he included a provision that if he should die without wife or children, the property of the trust was to be divided among his natural heirs. The trust instrument contained a provision, however, that the trustee should use the property for the benefit of the trustor, and that of his wife and children, should he thereafter marry.

As hereinbefore noted, this instrument contains no provisions for a termination of the trust nor the manner of disposition of the trust property, upon the termination of the trust, should the trustor have a wife or children.

It is at once recognized that the 1894 trust instrument which controlled the handling and ultimate disposition of the one-half interest in the real property (twice as much as that controlled by the 1917 trust instrument) is beset with many ambiguities.

First, the question is presented whether the income of the trust may be used by the trustee in such manner as the

his property at his death by will. Anding v. Davis, 38 Miss. 574 (1860). Such contracts are not repugnant to public policy. Price v. Craig, 164 Miss. 42, 143 So. 694 (1932). Moreover, the will of two or more persons executed pursuant to an oral agreement or understanding, may, within itself, when considered and construed together, constitute a contract. 97 C.J.S. Wills § 1367c (1957); Annot., 69 A.L.R. 206 (1930); Annot., 3 A.L.R. 172 (1919)." 185 So.2d 448.

trustee may elect; and, if this is true, whether Mrs. LeGrand, while acting as trustee, may devote the entire income of the trust to her own use, to the exclusion of the other beneficiaries. Secondly, the question is presented whether the trust terminates upon the death of Mrs. LeGrand, and if this is not the case, whether the trust continues in existence until the death of the survivor of the children. Thirdly, if the trust continues in existence until the death of the survivor of the children, the question is presented whether the trustee, during the lifetime of both children may, in his discretion use the entire income for the benefit of one child to the exclusion of the other. Lastly, the question is presented as to the disposition to be made of the corpus of the estate upon the termination of the trust. Does the property descend according to the codicil of the trustor? If not, what is the manner of its disposition?

The Court finds that the trust instruments executed by W. H. LeGrand are unclear and ambiguous in many respects, and present questions which are proper to be examined in courts of justice. Mrs. LeGrand's petition to the court presented justiciable controversies, such as might properly come before the court for decision.

Mrs. Council could not have relied upon the documents with any degree of safety, without the same being construed by the court. Before the entry of the court's decree there was a likelihood that the court might hold that the 1894 trust did not terminate until the death of all of the beneficiaries named therein, and that the trust property would thereupon revert to the estate of W. H. LeGrand to descend according to the provisions of his codicil. In the event of the death of Mrs. Council before her brother, such a construction would have delayed the enjoyment of the estate by her adopted daughter until after the death of her mother and brother, and her husband would not have received any benefit.

The trust instrument of 1917, conveyed only a one-fourth interest in the property, one-half of that held by the trustee by virtue of the 1894 trust instrument. The 1917 trust instrument is more specific than the 1894 trust instrument with reference to the termination of the trust and disposition of the trust property. The 1917 instrument provides that the trust shall terminate on the death of Mrs. LeGrand, and that title to the property shall thereupon vest in the children of the parties, share and share alike. While the 1917 instrument invested the trustee with wide discretion as to the application of the income of the trust, the language used does not make it clear that the trustee could elect to devote the entire income to her use, to the exclusion of the children. Thus, an ambiguity is created in this regard.

Confronted with this situation, on July 10, 1945, a short time after her husband's death, and after the probation of his will and codicil, Mrs. LeGrand, as trustee and executor, presented her petition to the Alabama Court seeking instructions from the court as to her duties and a construction of all the documents. It is apparent that an amicable solution of the family problems was reached by the parties. The petition was filed on July 10, 1945. M. P. LeGrand II signed his will and the contract for mutual wills the same day. Mrs. Council signed her will and the contract on July 21, 1945. The final decree was entered by the court on July 27, 1945. It is also apparent that in making the settlement the parties were influenced by the wishes of the husband and father as expressed in the codicil to his will; and the desire of Mrs. LeGrand to have the use of all of the income from the trust during her lifetime.

In effecting the settlement, Mrs. Council was assured, upon entry of the decree, that when her mother died she would become the owner in fee of her interest in the property, and would not run the risk of two-thirds of her interest continuing in the 1894 trust subject to its provisions.

The Government contends that Mrs. Council received nothing from the contract to execute mutual wills; on the other hand, she made a gift to the children of her brother of a one-eighth remainder interest in the property.

This argument presupposes that the Alabama Court decree, through which Mrs. Council's fee interest in the property was fixed, would have been entered whether or not the contract for mutual wills had been executed. The contract expressly recites that the interest of the parties in the property had not been definitely ascertained or determined as of the date of the contract. The decree was not entered until the contract had been executed. From this evidence the Court is of the opinion that the court proceedings, contract and wills, were related to each other and must be so considered.

██ It is well settled that a consideration to be sufficient in law need not be adequate and that there is a sufficient consideration for a promise if there be any benefit to the promisor. Miller v. Bank of Holly Springs, 1923, 131 Miss. 55, 95 So. 129.

██ The Court finds that benefits accruing and passing to Mrs. Council by virtue of the contract are sufficient to constitute a valuable consideration for the execution of the contract, and that the contract was binding upon the parties thereto.

Recognizing the force, validity, and effect of the contract and wills, which had been spread upon the land records of the county, thereby creating a cloud upon her title, Mrs. Council filed suit in the United States District Court at Montgomery to cancel the contract and wills, or if this could not be accomplished, to recover damages for the wrong alleged to have been perpetrated upon her by her brother. The parties admit that this litigation was hostile and adverse.

The litigation was settled by stipulation, as the result of which the contract and wills were cancelled and removed from the land records of the county. In consideration of this settlement Mrs. Council executed a deed by which, after reserving unto herself a life estate, she conveyed to her husband an estate for life after her death in a one-eighth interest in the property, and the remainder therein in fee to the three children of her brother. The government contends that this conveyance was not a bona fide sale for an adequate and full consideration in money or money's worth, for which reason the interest in the property conveyed thereby is includable in the gross estate of the decedent for tax purposes by virtue of 26 U.S.C. § 2036.

At the time of the execution of this conveyance the decedent was bound by a valid contract to will her entire interest (an undivided three-eighths interest) so that the title to said interest, after her death and the death of her husband, would vest in the children of M. P. LeGrand II and her children, adopted or natural. By executing the conveyance she removed and cancelled any claim of M. P. LeGrand II, or his children, to two-thirds of her holdings, and retained a life estate for herself and her husband in the other one-third, in which she conveyed the remainder to the children of her brother.

██ The Court holds and finds that the conveyance represented a bona fide sale for an adequate and full consideration in money or money's worth, and that the interest of Mrs. Council in the property conveyed thereby is not includable in the gross estate of Mrs. Council for tax purposes.

The holding of the Court that the cancellation of the contract and wills, which operated to release Mrs. Council's entire interest in the property from any claim by her brother or his children, constitutes an adequate and full consideration in money or money's worth for Mrs. Council's conveyance, within the purview of 26 U.S.C. § 2036(a) (1), has ample support in the reported cases.

In Mollenberg's Estate et al. v. Commissioner of Internal Revenue, 2 Cir. 1949, 173 F.2d 698, 701, the court said:

"The word 'sale' means an exchange resulting from a bargain, one in which the beneficiary gives or the grantor receives something of money value or a binding promise."

The case of Peoples First National Bank & Trust Co., Executor Under the Will of Sarah G. Rickeston, Deceased, v. United States of America, 3 Cir. 1957, 241 F.2d 420, 424, involved the bartering of rights held by the children of a decedent under the decedent's will, and the effect to be given to an agreement made in regard thereto. The court said:

"We think that the 1926 agreement, the deed, executed by the parties, was a bartering of the rights possessed by the parties thereto under their father's will and was in substance and amounted to a bona fide sale for an adequate and full consideration of money's worth."

The Fifth Circuit discussed the principles of law involved in the case sub judice in Grossman v. Campbell, 5 Cir. 1966, 368 F.2d 206. In *Grossman* the facts related in the opinion show that Mr. and Mrs. Stavely were married in 1931. They had no children of their own, but Mrs. Stavely had two children by a prior marriage and through these children she had three grandchildren. Mr. and Mrs. Stavely executed substantially identical wills in 1949. After certain specific bequests, each will contained a provision leaving essentially the entire estate to the survivor. On the survivor's death the remaining estate was to go to Mrs. Stavely's two children. On April 29, 1954, Mrs. Stavely executed a holographic will leaving the bulk of her estate to her children and grandchildren. However, on May 15, 1954, Mr. and Mrs. Stavely both formally executed substantially similar codicils to their 1949 wills. The codicils made only very minor changes in their 1949 wills. Mrs. Stavely died July 19, 1955. After the holographic instrument was discovered, a conference was held between Mrs. Stavely's two children and Mr. Stavely, at which the family attorney was present. The contention was made in the case that at this conference an oral agreement was reached whereby Mr. Stavely would receive the use of Mrs. Stavely's property for life, and the remainder of his and Mrs. Stavely's estate would go to Mrs. Stavely's two children, in return for their not attempting to probate the holographic will. The tax effect of the oral agreement on Mr. Stavely's estate was one of the main issues in the case. Mr. Stavely died in 1959 and his estate passed under his 1949 will and 1954 codicil to Mrs. Stavely's two children. One argument of the executor and distributees of Mr. Stavely's estate was that his estate should not be taxed because under the oral agreement Mr. Stavely sold the remainder interest and thus nothing remained for estate tax purposes. As to the alleged oral agreement the court said:

"The determining issue must be: Was there an actual dispute as to the validity of the 1949 will out of which a good faith, valid and bona fide settlement arose? If there was no such dispute and settlement, then the district court is correct and the government should prevail.[3]

"3. If there was a good faith, bona fide settlement of a valid dispute, then under the doctrine of Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938) the appellants should prevail." 368 F.2d 206, 209.

The court held that the holographic instrument, executed prior to Mrs. Stavely's republication of her will by the 1954 codicil, could not create a genuine dispute, because under Texas law applicable to the issue, it is clear that a codicil republishes the former will to which it refers as of the date of the codicil and voids all intervening wills, including holographic wills. The taxpayers, therefore, lost the issue.

However, it is clear in *Grossman,* that had there been a valid dispute the tax-

payer would have prevailed. In the case sub judice, there was a valid dispute as to the validity of the 1945 contract and wills, as has been hereinbefore indicated.

It is the judgment of the Court that the plaintiff should prevail in this action.

A judgment will be entered for the stipulated amount with statutory interest.